# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

JACQUELINE L. GORDON,      )
                        )
       Plaintiff,         )
                        )
      v.              )      No. 4:24-CV-1406 HEA
                        )
FRANK J. BISIGNANO,      )
Commissioner of Social Security,[1]  )
                        )
      Defendant.       )

## OPINION, MEMORANDUM AND ORDER

Plaintiff Jacqueline L. Gordon brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the Commissioner's final decision denying her application for disability insurance benefits (DIB) and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401, 1381, *et seq.*

A summary of the record is presented in the parties' briefs and is repeated here only to the extent necessary. For the following reasons, the decision of the Commissioner is affirmed.

---

[1]Frank J. Bisignano became the Commissioner of Social Security on May 7, 2025. Therefore, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank J. Bisignano should be substituted for Martin O'Malley as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I. *Procedural History*

On June 20, 2021, Plaintiff protectively filed her application for DIB and supplemental security income under Titles II and XVI. (Tr. 194-200).  Plaintiff, who was born in 1974, alleged she had been unable to work since April 1, 2021, due to a nerve impairment, diabetes, high blood pressure, high cholesterol, and neuropathy. (Tr. 297, 299, 323). Plaintiff's application was denied on initial consideration, and she requested a hearing before an Administrative Law Judge ("ALJ").  Plaintiff and counsel appeared for a hearing on October 27, 2022. (Tr. 34-67). Plaintiff testified concerning her disability, daily activities, functional limitations, and some of her past work. *Id.*  Plaintiff submitted a work history report and functional report, and the ALJ held a supplemental hearing on July 18, 2023, at which the ALJ received testimony from Plaintiff and vocational expert ("VE"), J. Stephen Dolan. (Tr. 68-92). On October 19, 2023, the ALJ issued an unfavorable decision finding Plaintiff not disabled. (Tr. 10-33). Plaintiff filed a request for review of the ALJ's decision with the Appeals Council.  On August 29, 2024, the Appeals Council denied Plaintiff's request for review. (Tr. 1).  Plaintiff has exhausted her administrative remedies, and the ALJ's decision stands as the final decision of the Commissioner subject to judicial review.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3).

In this action for judicial review, Plaintiff claims the ALJ committed reversible errors in her decision.  Plaintiff requests that the Commissioner's decision

2

be reversed, and the matter remanded for an award of benefits or for further evaluation.

## II. Legal Standard

To be eligible for DIB under the Social Security Act, plaintiff must prove she is disabled. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health & Hum. Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A). An individual will be declared disabled "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity. If the claimant is working, disability benefits are denied. Second, the Commissioner decides whether

the claimant has a "severe" impairment or combination of impairments, meaning that which significantly limits his or her ability to do basic work activities.  If the claimant's impairment is not severe, then he or she is not disabled.  Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity. If the impairment meets or equals one of the presumptively disabling impairments listed in 20 C.F.R., Part 404, Subpart P, Appendix 1, the claimant is considered disabled, regardless of age, education, and work experience.  20 C.F.R. §§ 416.920(a)(4)(iii), (d).

At the fourth step, if the claimant's impairment is severe but does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses whether the claimant retains the RFC to perform his or her past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(5)(i).  An RFC is "defined as the most a claimant can still do despite his or her physical or mental limitations." *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011); *see also*  20 C.F.R. § 416.945(a)(1). Ultimately, the claimant is responsible for providing evidence relating to his or her RFC, and the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources."  20 C.F.R. § 416.945(a)(3).  If, upon the

4

findings of the ALJ, it is determined the claimant retains the RFC to perform past relevant work, he or she is not disabled. 20 C.F.R. § 416.920(a)(4)(iv).

In the fifth step, the Commissioner evaluates various factors to determine whether the claimant is capable of performing any other work in the economy.  If the claimant's RFC does not allow the claimant to perform past relevant work, the burden of production shifts to the Commissioner to show the claimant maintains the RFC to perform work that exists in significant numbers in the national economy.  *See Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work which exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled. 20 C.F.R. § 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, the Commissioner finds the claimant disabled.  *Id.* In the fifth step, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016).

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole.  42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002).   Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion.  *Johnson v.*

*Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). The "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the Commissioner's findings." *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted). "Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis." *Id.* (internal quotation marks and citations omitted). Under this test, the Court "consider[s] all evidence in the record, whether it supports or detracts from the ALJ's decision." *Reece v. Colvin*, 834 F.3d 904, 908 (8th Cir. 2016). The Court "do[es] not reweigh the evidence presented to the ALJ" and will "defer to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence." *Id.* The ALJ will not be "reverse[d] merely because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently." *KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 370 (8th Cir. 2016).

### III. The ALJ's Decision

In a decision dated October 19, 2023, the ALJ applied the above five-step analysis and found Plaintiff had engaged in substantial gainful activity in the third quarter of 2022, but that there had been a continuous 12-month period during which Plaintiff did not engage in substantial gainful activity, (Tr. 13-14); Plaintiff has the severe impairments of severe right upper extremity tendinopathy, mild

6

acromioclavicular joint osteoarthritis, mild subacromial subdeltoid bursitis, type II diabetes mellitus, diabetic polyneuropathy, peripheral artery disease with mild to moderate stenosis of the right popliteal artery, degenerative disc disease and facet arthropathy of the lumbar spine, degenerative disc disease of the cervical spine, and obesity (Tr. at 14); and Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1.  (Tr. 16).

As for Plaintiff's RFC, the ALJ found that Plaintiff retained the ability to perform sedentary work as defined in 20 C.F.R. § 404.1567(a),[2] but she had the following additional functional limitations:

> [S]he cannot climb ladders, ropes, or scaffolds but can occasionally climb ramps and stairs. The claimant cannot balance on narrow, slippery, or erratically moving surfaces. She can engage in occasional stooping, kneeling, crouching, and crawling but cannot operate foot controls. The claimant is limited to occasional overhead reaching bilaterally and she can engage in frequent fine and gross manipulation. The claimant cannot work at unprotected heights or around hazardous machinery. She cannot perform work involving vibration, such as would be required by the operation of heavy equipment drills, jackhammers, or other such devices.

(Tr. 17).

---

[2]"Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

At the fourth step, the ALJ found Plaintiff was unable to perform her past relevant work. (Tr. 25). At the fifth step, relying on the testimony of the VE and considering Plaintiff's age, education, work experience, and RFC, the ALJ found there were jobs existing in significant numbers in the national economy that Plaintiff could perform, including food and beverage order clerk, cashier, and eyeglass assembler, which have exertion levels of sedentary. (Tr. 26). At the end of her analysis, the ALJ concluded Plaintiff was not disabled. (Tr. 27).

### IV.  Discussion

In support of her request for reversal and remand, Plaintiff argues that the ALJ made legal errors in that she based the step-five determination upon unreliable vocational expert testimony and, therefore, the Commissioner failed to show that Plaintiff can perform a significant number of jobs in the national economy. Plaintiff contends that the VE "grossly overstated" the number of jobs that she could perform that are available in the national economy. (ECF No. 12 at 5).

J. Stephen Dolan testified as a VE at the July 18, 2023, hearing. Plaintiff's counsel stipulated as to Mr. Dolan's credentials to testify as a VE. (Tr. 85). Mr. Dolan classified Plaintiff's past relevant work as a combination hospital cleaner and food service worker as having been performed at the medium exertion level, and he classified Plaintiff's past relevant work as a home attendant as having been performed at a heavy exertion level. The ALJ asked Mr. Dolan to assume Plaintiff

8

was limited to the RFC described above.  Dr. Dolan testified that if she were limited to this RFC, Plaintiff could not perform either of her past jobs. The ALJ then asked Mr. Dolan if there was other work an individual could perform at the sedentary exertional level with the above-listed additional restrictions and assuming Plaintiff's age, education, and work experience.  Mr. Dolan provided the following testimony:

> Yes, there are jobs a person with these restrictions can do. One example is food and beverage order clerk. That DOT number is 209.567-014. The SVP is 2. The exertional level is sedentary. The number nationally is about 10,000. Another example is sedentary and unskilled cashiers. The DOT number is 211.462-010. The SVP is 2. The exertional level of the cashiers I'm testifying about is sedentary. And varying from the DOT is categorized as unskilled cashiers at the light exertion level. That's an average, in the actual labor market there are sedentary, light and medium exertion-leveled unskilled cashiers. The cashiers I'm testifying about are found in parking lots, parking garages, cafeterias, *et cetera*, and the number is about 100,000. Another example is sedentary, unskilled assemblers. I'm grouping a number of DOT titles together. Now each of those titles is a type of assembler. Each of them is sedentary in the DOT and each of them has an SVP of 2. The cumulative number is about 20,000. The assembler DOT number is 713.687-018. And those are people doing the final assembly of eyeglasses.

(Tr. 88).

The ALJ credited Mr. Dolan's testimony, and in her decision, she wrote the following:

> Mr. Dolan's testimony included consideration of some factors not specifically addressed in the Dictionary of Occupational Titles (DOT) including overhead reaching, climbing of ramps and stairs versus ladders, ropes, and scaffolds, and operation of foot controls. He testified that he resolved these factors based on his professional observation and experience. Accordingly, pursuant to SSR 00-4p, the vocational

9

expert's testimony is consistent with the information contained in the DOT. Other hypothetical questions were posed which incorporated varying greater and/or lesser levels of impairment. However, I am obligated to adopt only those limitations and commensurate jobs as are consistent with the record considered in its entirety.

Based on the testimony of the vocational expert, I conclude that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy.

(Tr. 26).

Plaintiff argues that the ALJ's determination that Plaintiff is capable of performing work that exists in significant numbers in the national economy is not supported by substantial evidence, because the VE's testimony was not reliable in three respects.  First, Plaintiff contends the VE overstated the number of food and beverage order clerk positions that were available.  The VE testified that nationally there were approximately 10,000 food and beverage order clerks, DOT No. 209.567-014. In arguing that this figure is overstated, Plaintiff points to the fact that according to Job Browser Pro, there were only approximately 1,211 beverage order clerk positions available nationally in 2023 when the ALJ rendered her decision.  Second, Plaintiff argues that the VE provided no basis for how he determined the number of sedentary cashiers there were nationally. The VE testified that Plaintiff could perform the job of unskilled cashier at a sedentary exertional level. He clarified that the DOT categorized unskilled cashiers, DOT No. 211.462-010, at the light

exertional level, but that in his opinion, the DOT's exertional level was an average, and that in the actual labor market, unskilled cashier positions are performed at sedentary, light, and medium exertional levels. The VE testified that he was only offering an estimate of the number of sedentary unskilled cashiers, such as those found in parking lots, parking garages, and cafeterias, and that there were 100,000 sedentary, unskilled cashiers in the national economy. Plaintiff faults the VE for failing to provide any methodology or explanation as to how he calculated his estimate. Third, Plaintiff argues that the VE over exaggerated how many final eyeglasses assemblers there were in the national economy. At the hearing, he testified that 713.687-018 is the DOT number for final assemblers of eyeglasses. The VE further testified that cumulatively there were about 20,000 sedentary, unskilled assemblers in the national economy. In arguing that the VE's estimate for eyeglasses assemblers is inflated, Plaintiff again points to evidence from Job Browser Pro that she contends shows there were only 74 final eyeglasses assemblers nationally in 2023 when the ALJ rendered her decision.

The decision of the ALJ that Plaintiff is capable of performing work that exists in significant numbers in the national economy must be affirmed if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson*, 402 U.S. at 401; *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). "Under the substantial-evidence standard, a court looks *to an existing administrative record* and

11

asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (quoting *Consolidated Edison Co. v. N.L.R.B*, 305 U.S. 197, 229 (1938)) (emphasis added). "[T]he threshold for such evidentiary sufficiency is not high. … It means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.*

First, in her brief filed with the Court, Plaintiff references evidence purporting to show the VE's testimony was inaccurate as to the numbers of jobs in the national economy.  More specifically, she included charts from Job Browser Pro with job figures. (ECF No. 12 at 6, 8-9). In determining whether an ALJ's decision is supported by substantial evidence, a court is to examine the existing record and not outside evidence. *Biestek*, 587 U.S. at 102. Plaintiff did not submit this evidence to the ALJ or the Appeals Council.  In other words, these job reports from Job Browser Pro are not part of the administrative record, and the Court will not consider them in determining whether the ALJ's decision is supported by substantial evidence.  *Id. See also Okvath v. Kijakazi*, No. 4:22-CV-812 BRW/JJV, 2023 WL 3867940, at *2 (E.D. Ark. June 7, 2023), *report and recommendation adopted*, 2023 WL 4132720 (E.D. Ark. June 22, 2023).  The Court rejects Plaintiff's arguments that the VE's testimony is unreliable because it is contradicted by evidence that was not part of the

administrative record.  The Court will now turn to Plaintiff's argument that is not based on this outside evidence.

Plaintiff faults the VE for failing to provide any methodology or explanation as to how he calculated the number of sedentary cashier positions there were nationally. Plaintiff points to the fact that under the DOT, cashier jobs are classified as light, but the VE testified that there were approximately 100,000 sedentary cashier jobs in the national economy.  Plaintiff argues that under SSR 00-4p, the ALJ was required to reconcile the inconsistencies between the VE's testimony and the DOT.[3]

The Eighth Circuit Court of Appeals has construed SSR 00–4p "as placing on the ALJ an affirmative responsibility to ask about any possible conflict between VE evidence and the DOT, and to obtain an explanation for any such conflict, before relying on VE evidence to support a determination the claimant is not disabled." *Welsh v. Colvin*, 765 F.3d 926, 929 (8th Cir. 2014) (quotation omitted).  Here, the ALJ did just that.  She asked the VE whether his testimony was inconsistent with the DOT.  The VE explained that while it was not inconsistent, the DOT classified

---

[3]SSR 00-4p, *Titles II and XVI: Use of Vocational Expert and Vocational Specialist Evidence, and Other Reliable Occupational Information in Disability Decisions*, was rescinded on January 6, 2025, although it was in effect at the time the ALJ made her determination. *See* https://www.ssa.gov/OP_Home/rulings/di/02/SSR2000-04-di-02.html (last visited Mar. 27, 2026).  Plaintiff argues that under the Commissioner's replacement ruling, SSR 24-3p, *Titles II and XVI: Use of Occupational Information and Vocational Specialist and Vocational Expert Evidence in Disability Determinations and Decisions*, an ALJ  is required to question a VE about his or her methodology for determining the number of jobs in the national economy, although she acknowledges that the newer ruling was not in effect at the time her hearings were held.  *See https://www.ssa.gov/OP_Home/rulings/di/02/SSR2024-03-di-02.html* (last visited Mar. 27, 2026).

cashier jobs as light, which he believed was an average.  He testified that in his experience, cashier jobs are performed at medium, light, and sedentary exertional levels.  The VE further testified that "[his] answers relied upon [his] experience, which is 48 years of helping people with various kinds of disabilities find jobs in the labor market that they can do, [his] experience as an employer, [his] experience of listening to thousands of people testify about what happened that caused them to leave the jobs they used to have, and [his] experience having done vocational assessment interviews of people who have done the jobs that [he] just testified about." (Tr. 89).  The ALJ found this was a sufficient explanation, as does the Court. *Welsh*, 765 F.3d at 929 (finding ALJ may rely on a VE's experience in job placement or career counseling) (citing SSR 00–4p).  In fact, Plaintiff does not dispute that cashier jobs are performed at various exertional levels, including sedentary.  Rather, her argument is that the VE failed to provide an explanation as to how he reached the conclusion that there were 100,000 sedentary cashier jobs in the national economy.

The VE's sedentary cashier job estimate is not in conflict with the DOT, which is a list of occupational titles and not job figures. The DOT does not provide any information about the number of jobs in the national economy.  Because his opinion as to the number of sedentary cashier jobs did not conflict with the DOT, the ALJ was allowed to rely on his opinion and was not required to inquire as to the basis for

14

his opinion. *Courtney v. Comm'r, Soc. Sec. Admin.*, 894 F.3d 1000, 1003 (8th Cir. 2018). According to the Eighth Circuit,

> We have never held that SSR 00-4p places an affirmative responsibility on the ALJ to inquire further when a VE merely testifies to information not included in the DOT, but that does not conflict with it. Absent social security statutes, regulations, or policy rulings to the contrary, we decline to impose an additional duty on ALJs to inquire about the basis of all extra-DOT testimony by the VE. The Social Security Administration (SSA) describes VEs as "reliable sources of occupational information" and "sources of occupational evidence." SSR 00-4p, 2000 WL 1898704, at *1, *2; *see also* 20 C.F.R. § 416.966(e) ("If ... there is a ... complex issue, we may use the services of a vocational expert or other specialist."). … [U]nless a VE's testimony appears to conflict with the DOT, there is no requirement that an ALJ inquire as to the precise basis for the expert's testimony regarding extra-DOT information.

*Id.* at 1003–4. *See also Biestek*, 587 U.S. at 105 ("a vocational expert's testimony may count as substantial evidence even when unaccompanied by supporting data."); *Curcio v. Comm'r of Soc. Sec.*, 386 F. App'x 924, 926 (11th Cir. 2010) ("[T]he Social Security regulations clearly allow that the Commissioner may rely on a VE for her knowledge or expertise.").

At the hearing, Plaintiff's counsel stipulated as to Mr. Dolan's qualifications as a VE. He had testified as a VE at several hearings and had over 48 years' experience. Mr. Dolan testified and identified three sedentary jobs that Plaintiff could perform based on her RFC, age, education and work experience, and he opined that there were over 120,000 of those jobs in the national economy. Plaintiff's counsel neither objected to the VE's testimony nor cross-examined him as to his

qualifications or methodologies. At the hearing, the VE's testimony was unchallenged, and there was no evidence before the ALJ suggesting that the VE's estimates were flawed. Further, Plaintiff does not contend that the ALJ failed to include her limitations within the hypotheticals she posed to the VE. The Court finds, based on the administrative record before it, that the ALJ reasonably relied on the VE's testimony regarding the number of jobs in the national economy that Plaintiff could perform with her limitations. The VE's testimony amounts to substantial evidence to support the conclusion that Plaintiff is capable of performing work that exists in significant numbers in the national economy.

## V. Conclusion

The Court's task "is to determine whether the ALJ's decision 'complies with the relevant legal standards and is supported by substantial evidence in the record as a whole.'" *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010) (quoting *Ford v. Astrue*, 518 F.3d 979, 981 (8th Cir. 2008)). The Court finds that the ALJ properly evaluated the evidence in the record. The further finds her conclusion that Plaintiff is capable of performing other work that exists in significant numbers in the national economy, despite her RFC limitations, is supported by substantial evidence in the record.

Accordingly,

16

**IT IS HEREBY ORDERED** that the decision of the Commissioner is

**AFFIRMED**, and Plaintiff's Complaint is **DISMISSED with prejudice**.

A separate judgment will accompany this Memorandum and Order.

Dated this 30th day of March, 2026.

_____

HENRY EDWARD AUTREY

UNITED STATES DISTRICT JUDGE